IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEODECISIONS, a division of GANNETT FLEMING, INC., | : | No. 1:10-CV-2180 |
| Plaintiff | : | (Chief Judge Kane) |
| v. | : | |
| DATA TRANSFER SOLUTIONS, LLC, d/b/a DTS, | : | |
| Defendant | : | |

**MEMORANDUM**

On October 26, 2010, Defendant Data Transfer Solutions, LLC ("DTS") filed a motion to dismiss, supported by affidavit, challenging the Court's personal jurisdiction over DTS. (See Doc. No. 11.) On November 9, 2010, Plaintiff GeoDecisions ("GeoDecisions") filed a brief in opposition to the motion to dismiss. (Doc. No. 21.) The Court held oral argument on the motion on November 10, 2010. Because the Court finds that it has personal jurisdiction over DTS in this case, the motion will be denied. Accordingly, the temporary restraining order entered by the Court on October 22, 2010 (Doc. No. 6), will be reinstated pending the preliminary injunction hearing to be held on November 29, 2010.

**I.      BACKGROUND[1]**

GeoDecisions is a division of Gannett Fleming, Inc., a Delaware corporation, and has its principal place of business in Camp Hill, Pennsylvania. (Doc. No. 1 ¶ 1.) DTS is a Florida corporation and has its principal place of business in Orlando, Florida. (Id. ¶ 2.) Both

---

[1] "It is well established that in deciding a motion to dismiss for lack of [personal] jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." Toys " R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003).

1

companies are direct competitors in the information technology field and have historically competed for projects throughout the United States. (Id. ¶ 13.)

Kevin Switala is employed by GeoDecisions and works in Pennsylvania. In April 2010, Switala attended an industry meeting in California where he met David Buckley, a DTS Vice President. Approximately one week later, on April 27, 2010, Switala received an email from Buckley regarding the possibility of DTS and GeoDecisions teaming up on an upcoming project in the San Diego, California, region. After further discussions in May 2010, GeoDecisions prepared and emailed to DTS in Florida the Mutual Nondisclosure Agreement ("Agreement") which is now at issue in this case. Trey Fragala, DTS' Chief Operating Officer, signed and emailed the Agreement to Switala in Pennsylvania. Switala forwarded the agreement to GeoDecisions' headquarters in Camp Hill, Pennsylvania, where it was signed by DTS' President Anthony Pietropola. The Agreement was to be effective for two years and included, inter alia, a prohibition against disclosing confidential information exchanged between the two companies and a two-year agreement not to solicit for employment or employ any person employed by the other company. (Doc. No. 1 ¶¶ 29-30, 34.) The Agreement also included a choice-of-law provision that specified that it was to be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania. (Id. ¶ 35.)

In October 2010, DTS hired Connie Gurchiek, a GeoDecisions Vice President, who resides in Sarasota, Florida. (See Doc. No. 21 at 4.) Prior to leaving GeoDecisions, Gurchiek identified to DTS other GeoDecisions employees which DTS might be interested in hiring. (Id.) One such employee identified by Gurchiek was Don Kiel, a 17-year employee of GeoDecisions located in State College, Pennsylvania. (Id.) It is Kiel's testimony that, prior to tendering her

resignation to GeoDecisions, Gurchiek called Kiel on October 11, 2010, and urged him to contact DTS. Kiel was previously aware of DTS through his professional line of work. (Doc. No. 22-2 at 14.) On October 12, 2010, Kiel called Allen Ibaugh, DTS' Chief Executive Officer, and expressed his interest to join DTS. During the next week, Kiel and DTS exchanged several telephone calls and emails. According to Kiel's testimony, it is unclear whether any of these phone calls occurred while he was outside Pennsylvania, yet some calls may have been through Kiel's home phone in Pennsylvania. (See Doc. No. 22-2 at 20.) On October 18, 2010, based upon Kiel's interaction with DTS via telephone and email, Kiel received a letter at his home address in Pennsylvania from DTS offering him a position as "Senior Project Manager in [its] Pennsylvania office." (Doc. No. 21 at 4, 6; Doc. No. 22-2 at 39.) On October 20, 2010, Kiel accepted the offer by signing and returning the letter to DTS. (Doc. No. 21 at 6.) DTS responded by sending him, at his Pennsylvania home address, a "new employee" packet of forms to be completed. (Id.)

During his deposition, Ibaugh corroborated Kiel's testimony that DTS had extended an offer of employment and that Kiel had accepted that offer. (Doc. No. 23-2 at 20.) The only remaining issue to be determined regarding Kiel's employment was his start date. (Id.) Both Ibaugh and Fragala testified that it was their belief that Kiel would likely continue to work out of his home in State College, Pennsylvania. (Id. at 21; Doc. No. 24-2 at 26-27.)

As a result of DTS' alleged breach of the Agreement by, inter alia, attempting to hire Kiel, GeoDecisions filed the present action on October 22, 2010. (Doc. No. 1.)

## II.    DISCUSSION

"Under Federal Rule of Civil Procedure 4(k), a District Court typically exercises personal

jurisdiction according to the law of the state where it sits." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007). As stated by the Third Circuit Court of Appeals:

> Whether a district court has personal jurisdiction over a nonresident defendant is a two-part inquiry. First, there must be a statutory basis for exercising jurisdiction over the nonresident defendant in accordance with the law of the forum state. Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009). Second, the nonresident must have minimum contacts with the forum state sufficient to satisfy constitutional due process. Id.

Eurofins Pharma US Holdings v. BioAlliance Pharma SA, - - F.3d - - - -, No. 09-3790, 2010 WL 3960583, at *4 (3d Cir. Oct. 12, 2010). Here, the Pennsylvania long-arm statute provides for jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b); O'Connor, 496 F.3d at 316. Thus, in determining whether personal jurisdiction exists, the Court asks whether, under the Due Process Clause, DTS has "certain minimum contacts with [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation omitted).

"Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction." Metcalfe, 566 F.3d at 334; see Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.8, 9 (1984). In the present case, GeoDecisions asserts that DTS has the necessary Pennsylvania contacts needed to support both types of jurisdiction. The Court will address each in turn. See Metcalfe, 566 F.3d at 334 ("Because general and specific jurisdiction are 'analytically distinct categories,' we consider the facts relevant to each category separately." (internal citation omitted)).

4

### A. General Jurisdiction

"A court may exercise general jurisdiction over a defendant where he or she has 'continuous and systematic' contacts with the forum, whether or not those contacts are related to the plaintiff's cause of action." Metcalfe, 566 F.3d at 334 (citing Helicopteros, 466 U.S. at 416). Here, GeoDecisions' argument that the Court has general jurisdiction over DTS is brief:

> Discovery has disclosed that DTS has established, by its own admission, a "Pennsylvania office" and that it has hired a Pennsylvania resident to serve as Senior Project Manager of that office. As Mr. Kiel is working in, and representing Defendant from, DTS' Pennsylvania office, DTS has voluntarily subjected itself to the jurisdiction of this Court.

(Doc. No. 21 at 7.) The Court is unconvinced that these alleged contacts are sufficient to establish general jurisdiction. Typically, general jurisdiction will require a corporate defendant to have an office in the forum state, although substantial contacts from a foreign corporation may also give rise to general jurisdiction. See D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 107-09 (3d Cir. 2009); see also 16 James Wm. Moore, Moore's Federal Practice §108.41 (Matthew Bender 3d ed.). According to GeoDecisions' allegations, Kiel accepted an offer to work for DTS just two days before GeoDecisions filed the complaint in the instant case. Kiel is not yet employed by DTS and, as of yet, has not established any office in Pennsylvania on DTS' behalf. Nor is there any evidence in the record that DTS applied for and received authorization to do business in Pennsylvania. See, e.g., Bane v. Netlink, Inc., 925 F.2d 637, 640 (3d Cir. 1991) (concluding registration by a foreign corporation constitutes consent to be sued in Pennsylvania). Although general jurisdiction would be found if DTS had actually successfully established a Pennsylvania office, the limited contact that has been established to date fails to rise to the level of the "continuous and systematic" contacts necessary to establish general jurisdiction. See

generally Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952) (outlining the contours of general jurisdiction). Therefore, the Court may not exercise general jurisdiction over DTS.

### B. Specific Jurisdiction

GeoDecisions' better argument is that the Court has personal jurisdiction because of DTS' specific contacts with Pennsylvania related to this case. As noted by the Third Circuit:

> The inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have "purposefully directed [its] activities" at the forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quotation marks omitted). Second, the litigation must "arise out of or relate to" at least one of those activities. Helicopteros, 466 U.S. at 414; Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1559 (3d Cir. 1994). And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l Shoe, 326 U.S. at 320).

O'Connor, 496 F.3d at 317. Here, GeoDecisions asserts that DTS took specific action aimed at Pennsylvania. First, DTS' Vice President Buckley sent an email to Switala in Pennsylvania expressing interest in pursuing a joint venture with GeoDecisions. Second, after GeoDecisions emailed the Agreement that it had prepared to DTS in Florida, DTS signed it and sent it back to Pennsylvania. Third, in violation of the Agreement, DTS hired Kiel and has indicated that it would employ Kiel in a new DTS Pennsylvania office.

#### 1. Purposeful Availment

"The mere existence of a contract is insufficient to establish minimum contacts." Budget Blinds, Inc. v. White, 536 F.3d 244, 261 (3d Cir. 2008). However, in this case, DTS' contacts with Pennsylvania are not limited solely to the signing of the contract. To the contrary, one basis of GeoDecisions' claim is that DTS violated the Mutual Nondisclosure Agreement by attempting to hire Kiel and by demonstrating an intent to use Kiel to establish a presence in Pennsylvania.

It appears to the Court that: (1) Gurchiek was not yet in DTS' employ at the time she contacted Kiel, and (2) it was Kiel who first contacted DTS. Yet Plaintiff has put forward evidence which suggests that DTS contacted Kiel after he reached out to DTS. Moreover, according to the offer of employment letter received by Kiel, DTS expressed its desire that Kiel become a "Senior Project Manager in our Pennsylvania office." (Doc. No. 21 at 6.)

Based on these facts, the Court concludes that DTS has purposefully directed its activities towards Pennsylvania. Indeed, by manifesting its intent to employ Kiel in Pennsylvania, DTS has "deliberate[ly] target[ed] . . . the forum." O'Connor, 496 F.3d at 317; cf. Burger King, 471 U.S. at 479 (holding "prior negotiations and contemplated future consequences" must be considered in evaluating minimum contacts); Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 301 (3d Cir. 2008) ("[T]he fact that Chevron sent Kehm a cease and desist letter does not rise to the level of purposeful availment for purposes of jurisdiction in Pennsylvania, since the letter expresses the goal not to do business in Pennsylvania."); General Elec. Co. v. Deutz AG, 270 F.3d 144, 151 (3d Cir. 2001) (finding that which party initiated the relationship is not significant and concluding that "[i]n the commercial milieu, the intention to establish a common venture extending over a substantial period of time is a more important consideration").

### 2. Whether Claims Arise Out of Defendant's Contacts with Forum

After concluding that DTS purposefully directed its activities at the forum, the Court must determine whether the claims asserted by GeoDecisions arise out of those contacts. In contract cases, when evaluating whether the claims arise out of the defendant's contacts with the forum, the Third Circuit counsels that "courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." General

7

Elec. Co., 270 F.3d at 150. This factor requires little analysis. GeoDecisions contends that DTS breached the Mutual Nondisclosure Agreement by forming an employer-employee relationship with a Pennsylvania resident, who was to become Senior Project Manager in DTS' Pennsylvania office. Therefore, the situs of the alleged breach of the agreement is Pennsylvania, and the Court must conclude GeoDecisions' claim "arises out of" DTS' contacts with the forum state.

### 3. Traditional Notions of Fair Play and Substantial Justice

The Court next considers whether the exercise of its jurisdiction otherwise comports with fair play and substantial justice. "The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" O'Connor, 496 F.3d at 324 (quoting Burger King, 471 U.S. at 477) (further citations omitted)). The factors to be considered in making a reasonableness determination are: (1) the burden on the defendant, (2) the forum State's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies and (5) the shared interest of the several States in furthering fundamental substantive social policies. Burger King, 471 U.S. at 477 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)); Lehigh Coal and Navigation Co. v. Geko-Mayo, GmbH, 56 F. Supp. 2d 559, 569 (E.D. Pa. 1999).[2]

#### i. The burden on DTS of defending in the forum.

---

[2] The Court has identified only one Supreme Court case to have conducted this analysis and found that the defendant had met its burden. See Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102 (1987). In that case, the Court held that California did not have a sufficient interest where the California plaintiff was no longer a party to the suit, and the only remaining parties were located in Japan and Taiwan. Id. at 114-16.

The burden on DTS of defending in Pennsylvania is minimal. The Court recognizes that DTS is a Florida corporation with its principal place of business in that state. However, "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957). Additionally, this is not a case where DTS would be forced to "defend oneself in a foreign legal system." See, e.g., O'Connor, 496 F.3d at 324; Asahi, 480 U.S. at 114. That is, DTS is not a Japanese corporation attempting to navigate the American legal system. See, e.g., Asahi, 480 U.S. at 114. As such, to the extent that the Court does recognize a burden on DTS, it concludes that burden is slight and does not warrant significant consideration.

    **ii.  Pennsylvania's interest in adjudicating the dispute.**

As to the second factor, Pennsylvania has a strong interest in adjudicating this dispute. Plaintiff GeoDecisions has its principal place of business in Pennsylvania. Kiel – whose employment forms the basis of this dispute – is a Pennsylvania resident and employee and, according to his testimony, does not expect these facts to change. To that end, unlike Asahi where the forum had only a "slight" interest in the litigation, here the presence of a Pennsylvania Plaintiff injured by DTS' contacts in Pennsylvania arising out of a contract formed under the laws of Pennsylvania indicates that Pennsylvania has a "manifest interest" in this litigation. See McGee, 355 U.S. at 223.

    **iii.  The importance of the forum to GeoDecisions' interest in convenient and effective relief.**

As a corporation with its principal place of business in Pennsylvania, GeoDecisions undoubtedly has an interest in litigating this matter in Pennsylvania. See, e.g., Koff v. Brighton Pharm., Inc., 709 F. Supp. 520, 528 (D.N.J. 1988) (holding that where plaintiffs reside in the

9

forum "plaintiffs have a valid interest in preserving their chosen forum"). Accordingly, this factor weighs in favor of this cause of action remaining in the Middle District of Pennsylvania.

        **iv.**  **The most efficient judicial resolution of the controversy.**

"To decide [this] factor, the District Court should 'focus on the location of the evidence and witnesses.'" Budget Blinds, 536 F.3d at 265-66 (quoting Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1133 (9th Cir. 2003)). Here, the Agreement at issue was drafted in Pennsylvania by a business in Pennsylvania. DTS has allegedly breached the agreement by hiring a GeoDecisions' employee in Pennsylvania and by expressing its intent to keep him in the state. Therefore, at least some of the evidence and witnesses related to this case will be in Pennsylvania. Furthermore, the choice of law provision governing this dispute provides that Pennsylvania substantive law will apply. See O'Connor, 496 F.3d at 324-25 (questioning the efficiency of litigating in Pennsylvania when it is not clear that Pennsylvania law would apply to the merits). The fourth factor weighs in favor of personal jurisdiction.

        **v.**  **The shared interest of the several states in furthering fundamental substantive social policies.**

Finally, having weighed the preceding four factors and concluding that the balance of factors tips in favor of litigation in Pennsylvania, the Court is unable to conceive of any impairment of substantive social policy that would be so compelling as to satisfy DTS' heavy burden of establishing a violation of the traditional notions of fair play and substantial justice. The Court concludes that it has specific jurisdiction in this case.

## III. CONCLUSION

For the foregoing reasons, the motion to dismiss for lack of personal jurisdiction will be denied. Accordingly, the temporary restraining order entered by the Court on October 22, 2010

(Doc. No. 6), will be reinstated pending the preliminary injunction hearing to be held on November 29, 2010. An order consistent with this memorandum follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEODECISIONS, a division of GANNETT FLEMING, INC., Plaintiff | : : : : | No. 1:10-CV-2180 (Chief Judge Kane) |
| v. | : : | |
| DATA TRANSFER SOLUTIONS, LLC, d/b/a DTS, Defendant | : : : | |

## ORDER

**AND NOW**, on this 15th day of November 2010, **IT IS HEREBY ORDERED THAT** Defendant's motion to dismiss for lack of personal jurisdiction (Doc. No. 11) is **DENIED**. Accordingly, the temporary restraining order entered by this Court on October 22, 2010 (Doc. No. 6), is **HEREBY REINSTATED** pending the preliminary injunction hearing to be held on November 29, 2010.

S/ Yvette Kane  
Yvette Kane, Chief Judge  
United States District Court  
Middle District of Pennsylvania